# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Leroy Fulton**, | ) Civil Action No. 2:15-4355-RMG-BM |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| **Christopher Nisbet, in his individual capacity,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

This action has been filed by the Plaintiff asserting claims for deprivation of rights under 42 U.S.C. § 1983[1] as well as state law claims for false imprisonment and assault. After several extensions delaying the case as a result of related state court proceedings, the Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiff has filed memoranda in opposition to the Defendant's motion. Defendant's motion is now before the Court for disposition.[2]

## Discussion

This action arises out of an incident that occurred on August 25, 2015. At that time, the Defendant was the Coroner for Dorchester County, South Carolina. Plaintiff alleges that on that

---

[1]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings. As the Defendant's motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the Court.



1

date, while driving his County issued truck, the Defendant pulled over the Plaintiff and approached the Plaintiff in his vehicle with his weapon drawn. Plaintiff alleges that the Defendant unlawfully detained him with the threat of deadly force while using racial epithets directed towards him.[3] Plaintiff further alleges that when Summerville Police Officers arrived on the scene, they directed the Defendant to drop his weapon, but that it was only after several verbal commands that the Defendant did so. Plaintiff alleges that the Defendant conducted an unlawful and unreasonable stop and seizure of the Plaintiff and used excessive force against him in violation of his constitutional rights (First Cause of Action), falsely imprisoned him under state law (Second Cause of Action), and also committed a state law assault on him (Third Cause of Action). Plaintiff seeks monetary damages. See generally, Complaint.

Both parties have submitted numerous exhibits in support of, and opposition to, the Defendant's motion for summary judgment. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. As the moving party, the Defendant has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, in order to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[3]The Defendant is White, while the Plaintiff is African-American.



2

The Defendant's arguments for summary judgment in the case, and Plaintiff's responses, are addressed in turn. After careful review of the arguments presented and the applicable law, the undersigned finds for the reasons set forth hereinbelow that the Defendant is not entitled to summary judgment in this case.

**I.**

The Defendant initially argues that he is immune from suit under Plaintiff's First Cause of Action by virtue of the Eleventh Amendment to the United States Constitution. However, while the Defendant may enjoy Eleventh Amendment immunity from suit under § 1983 in his official capacity; see Will v. Michigan Dep't. of State Police, 491 U.S. 58, 70 (1989); cf. Williams v. City of Sumpter Police Dep't., No. 09-2486, 2011 WL 723148, at n. 2 (D.S.C. Feb. 23, 2011); Faltas v. South Carolina, No. 12-1786, 2012 WL 6103204, at * 8 (D.S.C. Nov. 14, 2012), adopted 2012 WL 6106421 (D.S.C. Dec. 10, 2012); Plaintiff specifically alleges in his Complaint that he is suing the Defendant, who was the Coroner for Dorchester County at the time of the incident at issue in this lawsuit, in his individual capacity for a violation of his constitutional rights pursuant to § 1983. Complaint, ¶ 6, see also Caption to Complaint.[4]

As the County Coroner, the Defendant is subject to suit for damages under § 1983 in his individual capacity. Will, 491 U.S. at 71; Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodman v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Therefore, the Defendant is not entitled to summary judgment on Plaintiff's federal claim based on Eleventh Amendment immunity.

---

[4]But see also Complaint, ¶ 13.



3

**II.**

The Defendant also argues that at the time set forth in the Complaint he was not acting "under color of state law", which is a requirement for liability under § 1983.[5]  Rather, Defendant argues that his conduct was "entirely of a private nature".  <u>Defendant's Brief</u>, p. 9.  This argument is also without merit.

The evidence shows that at the time of the incident at issue the Defendant was the elected Dorchester County Coroner.  <u>See</u> Plaintiff Exhibit 1 (Oath of Office).  The Coroner is the Chief Investigating Officer of the office, is on duty twenty-four (24) hours a day, seven (7) days a week, and works in close association with law enforcement agencies when necessary.  <u>See</u> Plaintiff's Exhibit 2.  With respect to the specific incident at issue in this lawsuit, and considered in the light most favorable to the Plaintiff, the evidence reflects that on the night of August 25, 2014, Plaintiff was awoken by someone knocking on his door.  When the man at the door told Plaintiff he was there to repossess a vehicle, Plaintiff told him to leave his property.  <u>See generally</u>, <u>Plaintiff's Deposition</u>, pp. 103-112.  Plaintiff testified that he was not presented with any paperwork or documentation by the purported repossession man, and that he informed the man he did not have permission to repossess his vehicle.  Plaintiff testified that he then got into his vehicle to keep the situation from getting any worse.  <u>Plaintiff's Deposition</u>, pp. 103, 107-108, 111.  At that time, the purported repossession man, John Mauldin, called 911 and told the dispatcher that Plaintiff had pointed a handgun at him.  <u>See</u> Plaintiff's Exhibit 5 (audio call).  However, Plaintiff testified that he never

---

[5]To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).



pointed a gun at Mauldin.  Plaintiff's Deposition, p. 106.

       While Mauldin was on the phone with 911 dispatch, the Defendant walked up to Mauldin,[6] identified himself as the Dorchester County Coroner, and offered to block the Plaintiff's driveway with his official vehicle and assist Mauldin with the repossession.  See Plaintiff's Exhibit 5 (911 audio call).  It is undisputed that when the Defendant first approached Mauldin, he identified himself as the Dorchester County Coroner.  See Plaintiff's Exhibit 5.  Mauldin told the Defendant that Plaintiff had pointed a gun at him,[7] and the Defendant called Summerville Police Officer Douglas Wright to report the incident.  Defendant's Deposition, pp. 164-165.  Meanwhile, as noted, Mauldin had also called the Summerville Police 911 Dispatch to report the incident.  Mauldin Deposition, p. 21.

       Plaintiff then left his house in his vehicle, and the Defendant, in his official county vehicle, followed the Plaintiff and activated his vehicle's blue lights and siren.  Defendant's Affidavit, ¶ 7.  When the Plaintiff stopped and pulled over, the Defendant pointed his County issued firearm at the Plaintiff while cursing at him.  Plaintiff's Deposition, pp. 62-64, 124, 126-128, 162-163; see also Defendant's Deposition, pp. 184-187; Defendant's Affidavit, ¶ 8.  After Summerville Police officers arrived on the scene, the Defendant confirmed that he had pulled over the Plaintiff in his official vehicle, had drawn his hand gun, and ordered Plaintiff to get out of his car.  Winningham

---

[6]The Defendant lived across the street from Plaintiff's house.  See Defendant's Deposition, pp. 164, 168, 221; see also Plaintiff's Exhibit 5 (911 audio call).

[7]Plaintiff and the Defendant dispute whether the Defendant himself saw, or thought he saw, Plaintiff point a handgun at Mauldin.  See generally, Defendant's Deposition, pp. 144, 159-161; Defendant's Affidavit, ¶ 4; Winningham Deposition, pp. 124-125 [Attached to 45-6]; Plaintiff's Exhibit 5.  Nonetheless, it is undisputed that Mauldin told the Defendant that Plaintiff had pointed a gun at him.  Mauldin Deposition, p. 22.



Deposition, pp. 102-103.  Even so, the evidence reflects that Plaintiff was never charged with having committed a crime, and was ultimately released and given a ride home by police officers.[8]  Kufen Deposition, pp. 29-30, 74-75; see also Plaintiff's Exhibit 13.

The video of the incident shows the Defendant cursing, and the Defendant also admits that he called the Plaintiff a racial epithet.  See Plaintiff's Exhibit 8; see also Winningham Deposition, pp. 115-120; Defendant's Deposition, pp. 205, 207-208, 220-221.  Following an investigation by the South Carolina Law Enforcement Division (SLED), the Defendant was charged with misconduct in office.  Owen Deposition, pp. 18-27; Defendant's Affidavit, ¶ 19.  The Defendant's indictment specifically charged the Defendant with willfully and unlawfully breaching his duty of accountability to the public by failing to properly and faithfully discharge his duty, in that "while serving as the elected Coroner of Dorchester County, the Defendant did misuse his office to effect an unlawful arrest on a private citizen".  See Plaintiff's Exhibit, p. 17.

As noted, in arguing that Plaintiff's federal claim should be dismissed, Defendant argues that he was not acting "under color of state law" during this incident, that there was therefore no "state action", and that "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful".  See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999), citing Blum v. Yaretsky, 457 U.S. 991 (1982).  However, considered in the light most favorable to the Plaintiff, the facts and evidence presented in this case clearly, at the very least, establish a genuine issue of fact as to whether, at the time of the incident at issue, the Defendant was acting in his capacity as an elected official and under the auspices of his county office sufficient to survive

---

[8]Mauldin was allowed to complete the repossession of Plaintiff's vehicle.  See Plaintiff's Exhibit 13.



summary judgment on the question of whether his conduct was "under color of state law" for purposes of a claim under § 1983.  Cf. American Mfrs, 526 U.S. at 50 [Person who may fairly be said to be a state actor may be charged with a deprivation pursuant to § 1983.].  The evidence shows that the Defendant identified himself as a public official, used his county vehicle including its blue lights and siren to effect a traffic stop, and then held the Plaintiff until Summerville Police arrived on the scene.  West, 487 U.S. at 49 [An individual acts under color of state law when exercising "power . . . made possible only because the wrongdoer is clothed with the authority of state law"].

Therefore, the Defendant is not entitled to summary judgment on the ground that he was not acting "under color of state law" at the time of the incident at issue.  See Muhammed v. Klotz, 36 F.Supp. 2d 240, 243 (E.D.Pa. 1999) ["[A]t the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law!"], citing Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 250-252 (1986).

### III.

The Defendant also argues that Plaintiff's claim for an unlawful seizure and for excessive force in violation of his Fourth Amendment rights is subject to dismissal,[9] as the Plaintiff

---

[9]Although Plaintiff has alleged only one federal cause of action, his First, he has clarified that he is actually asserting two (2) claims in that cause of action - one for unlawful seizure and one for excessive use of force.  See Court Docket No. 48.  Although these claims should have been set forth in two separate causes of action; see Murphy v. Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011) [Finding that where claims are distinct claims they should be alleged in separate counts]; supplemental briefing was allowed on the excessive force claim, and both claims are now therefore before the Court for decision as part of Defendant's

(continued...)



has failed to show a lack of probable cause for the Defendant's stoppage and detainment of the Plaintiff, and has failed to show that excessive force was ever used by the Defendant.

**Unlawful Seizure**. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment". United States v. DiGiovanni, 650 F.3d 498, 506 (4th Cir. 2011), (citing Whren v. United States, 517 U.S. 806, 809-810 (1996)), abrogated on other grounds, Rodriguez v. Unite States, 575 U.S. ___, 135 S.Ct. 1609 (2015); see also United States v White, ___ Fed.Appx. ___, 2017 WL 4149530 at * 1 (4th Cir. Sept. 19, 2017). Therefore, Plaintiff's allegation that he was unlawfully detained and "seized" by the Defendant states a claim under the Fourth Amendment. Robinson v. Brown, No. 15-387, 2016 WL 4975021 at * 3 (D.S.C. Sept. 19, 2016) [Noting that an individual is "seized" under the Fourth Amendment when there is a termination of freedom of movement through means intentionally applied]; United States v. Melo, No. 89-5554, 1989 WL 117839 at *1 (4th Cir. 1989) [Fourth Amendment protection is triggered when a person is seized by law enforcement officers].

However, as noted, the Defendant argues that Plaintiff's Fourth Amendment seizure claim fails because he had probable cause to pull over and detain the Plaintiff. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred". Whren, 517 U.S. at 810; see also Artiga Carrero v. Farrelly, No. 16-3939, 2017 WL 4167398, at * 8 (D.Md. Sept. 19, 2017). "Probable cause exists if, given the totality

---

[9](...continued)
summary judgment motion. See also Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010)[Plaintiff only required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]; Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendant of the plaintiff's claim].



8

of the circumstances, the officer 'had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense'". <u>United States v. Sowards</u>, 690 F.3d 583, 588 (4th Cir. 2012), citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964); <u>see also</u> <u>Porterfield v. Lott</u>, 156 F.3d 563, 569 (4th Cir. 1998). Even so, "[a]n automobile stop is . . . subject [to] the constitutional imperative that it not be 'unreasonable' under the circumstance". <u>Whren</u>, 517 U.S. at 810; <u>see</u> <u>also</u> <u>Wilson v. Arkansas</u>, 514 U.S. 927, 931 (1995) [The Fourth Amendment commands that seizures be reasonable].

Defendant argues that he had sufficiently reasonable information to give him probable cause to make a traffic stop because he personally observed the Plaintiff committing a crime; i.e., pointing a handgun at Mauldin. <u>Defendant's Deposition</u>, pp. 144, 160-161; <u>see also</u> <u>Defendant's Affidavit</u>, ¶ 4. It is undisputed that Mauldin also told the Defendant that Plaintiff had pointed a gun at him. <u>Mauldin Deposition</u>, p. 22. Defendant notes that there is a South Carolina statute which makes it unlawful for a person to present or point at another person a loaded or unloaded firearm; <u>see</u> S.C.Code Ann. § 16-23-410; and argues that he therefore had probable cause to stop the Plaintiff when he attempted to leave in his vehicle and detain him until the Summerville Police arrived on the scene. <u>Beck</u>, 379 U.S. at 91 [Probable cause exists for a seizure if the totality of the facts and circumstances are "sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense"]; <u>see also</u> <u>United States v. Beckham</u>, 325 F.Supp.2d 678, 687 (E.D.Va. 2004) [A victim's statement will normally constitute sufficient probable cause unless there is an apparent reason for the officer to believe the victim is lying],[10] citing <u>Ahlers v. Schebil</u>,

---

[10]Plaintiff has submitted evidence indicating that Mauldin may have had a "vendetta" against
(continued...)



No. 188 F.3d 365, 370 (6th Cir. 1999).

Plaintiff argues, however, that there is a genuine issue of fact as to whether the Defendant had probable cause to believe that Plaintiff had committed a criminal offense, and considering the evidence presented in the light most favorable to the Plaintiff, the undersigned is constrained to agree. First, Plaintiff specifically denies that he ever pointed a gun at Mauldin, or even had a gun during his confrontation with Mauldin. Plaintiff's Deposition, pp. 28-29, 106-107, 129. As such, Plaintiff's sworn testimony (which the Court must assume to be true for purposes of summary judgment) directly contradicts the sworn testimony of the Defendant on this issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 [At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact].

Additionally, Officer George Winningham testified that after he arrived on the scene and during his questioning of the participants, the Defendant admitted to him that he did not actually know if Plaintiff ever had a gun. Winningham Deposition, pp. 124-125. See also Winningham Video (Plaintiff's Exhibit 8). See Sowards, 690 F.3d at 594 [Finding summary judgment for the Defendant was not appropriate where the officer's estimate "was in fact a guess that was merely

---

<sup>10</sup>(...continued)
the Plaintiff as a result of previous unsuccessful repossession attempts (of which the Defendant was aware), which Plaintiff contends calls in to question the veracity of Mauldin's claim. See Plaintiff's Exhibit 15. Although Mauldin's fiancé, Heather Dietiker, testified that she was in Mauldin's truck during this incident and that she also saw Plaintiff point a pistol at Mauldin, it is unclear whether she told the Defendant what she had allegedly seen prior to the Defendant's conduct at issue in this lawsuit. See Dietiker Deposition, p. 15.



conclusory, without an appropriate factual foundation," and therefore not "an objectively reasonable basis for probable cause to initiate a traffic stop"]. Further, Officer Jason Kufen, who was also on the scene that night, testified that Plaintiff was not found to be in possession of a firearm, that a search of the area did not recover any firearm,[11] and that he had no basis to charge the Plaintiff with a violation of any law. Kufen Deposition, pp. 28-31, 37-40, 68. Kufen also testified that, based on their investigation, there was no factual basis on which to disbelieve Plaintiff's account of the events, nor was there any probable cause to arrest the Plaintiff for any offense. Id., ¶¶ 72, 74-75. See Brinegar v. United States, 338 U.S. 160, 175-176 (1949) ["probable cause [requires] a reasonable ground for belief of guilt . . . to allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice"]. David Owen, the SLED investigator who investigated this incident, also testified that as a result of his interviews and review of the video and audio evidence from that evening, he did not find that Plaintiff had done anything illegal, and that the Defendant had no lawful basis "to chase down and seize [the Plaintiff]". Owen Deposition, pp. 25-26. Owen further testified that, based on his review of the body worn cameras and all of the materials he was provided for his investigation, he had determined that the Defendant did not in fact view Plaintiff in possession of any firearm. Id., p. 45.

The Defendant's account of the events is also called into question by evidence indicating that he harbored malice and ill will towards the Plaintiff, including that he was irate over Plaintiff's purported past attempts to hide property to keep it from being repossessed, and by his repeated references to the Plaintiff by using a racial epitaph. See Owen Deposition, pp. 50-51;

---

[11]There was an allegation (apparently by Mauldin) that the Plaintiff may have thrown something out of his automobile. Kufen Deposition, pp. 37-38.



<u>Winningham Video</u> (Plaintiff's Exhibit 8); <u>911 Audio</u> (Plaintiff's Exhibit 5); <u>Defendant's Deposition</u>, pp. 207-208, 220-221; <u>see also</u>, n. 10, <u>supra</u>. See <u>Graham v. Conner</u>, 490 U.S. 386, 399, n. 12 (1989) ["[I]n assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider . . . evidence that the officer may have harbored ill-will toward the citizen"], citing <u>Scott v. United States</u>, 436 U.S. 128, 129, n. 13 (1978). In fact, it is undisputed that it was the Defendant, not the Plaintiff, who ended up being charged with a criminal violation as a result of the incident at issue; to wit: misconduct in office including effecting an unlawful arrest of a private citizen. <u>Owen Deposition</u>, pp. 31-34.[12]

Therefore, while the Defendant has provided evidence to dispute Plaintiff's claim and to show that he believed he did have probable cause to pull over and detain the Plaintiff, considering the evidence in the light most favorable to the Plaintiff, as this Court is required to do at summary judgment, the undersigned does not find that "[n]o reasonable trier of fact could conclude" that the Defendant lacked probable cause and therefore unlawfully "seized" the Plaintiff in violation of the Fourth Amendment. <u>Spratley v. Hampton City Fire Dept.</u>, 933 F.Supp. 535, 542 (E.D.Va. 1996), <u>aff'd</u>, 125 F.3d 848 (4th Cir. 1997); <u>see</u> <u>Anderson</u>, 477 U.S. at 255 [At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact]; <u>Muhammad</u>, 36 F.Supp.2d at 243. Defendant's motion for summary judgment on Plaintiff's First Cause of Action asserting an unlawful seizure in violation of the Fourth Amendment therefore should be denied.

---

[12]This charge was later dropped, and Defendant pled guilty to a charge of breach of the peace. <u>Defendant's Affidavit</u>, ¶ ¶ 19-20.



**Excessive Use of Force**.  In addition to alleging an unlawful "seizure" in his First Cause of Action, Plaintiff also alleges that the Defendant "furthermore used excessive force during the unconstitutional seizure of Plaintiff".  Complaint, ¶ 21.  A Fourth Amendment excessive force claim can be prosecuted in this Court under § 1983.  Hayes v. Knight, No. 13-816, 2015 WL 225753, at * 9 (D.S.C. Jan. 16, 2015) ["The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person"], citing Riley v Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997) and Graham v. Conner, 490 U.S. at 388; cf. Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014) [a Plaintiff claiming excessive force under the Fourth Amendment can seek nominal damages even if he does not have compensable injuries].

Defendant argues that he is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff has presented no evidence of a seizure "effectuated by excessive force".  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc), quoting Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006).  Defendant notes that such clams are based on a standard of "objective reasonableness"; i.e., whether the amount of force used by an officer was objectively reasonable in light of the facts and circumstances confronting them.  Graham, 490 U.S. 396-397; Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005) [reasonableness of amount of force used must be judged from the perspective of a reasonable officer on the scene]; Young v. Prince George's County, Md., 355 F.3d 751, 757 (4th Cir. 2004) [Court should "view the totality of the circumstances from the perspective of a reasonable officer on the scene"], quoting Graham, 490 U.S. at 396.  Here, Defendant argues that the force he used to detain the Plaintiff was reasonable under the circumstances because Plaintiff had brandished a firearm and Defendant was therefore justifiably fearful for his own safety.  Defendant further argues that Plaintiff had "committed a violent felony and was attempting to flee", that his

13



response was therefore both "reasonable and proportionate," and that "no reasonable juror could determine that any excessive force occurred". Defendant's Supplemental Brief, at p. 5.

However, Defendant's argument is based on his version of the events being true. The undersigned has already found that a genuine issue of fact exists between the Defendant's version and Plaintiff's version of what happened, and, as noted, this Court must assume *Plaintiff's* facts to be true for purposes of summary judgment. Additionally, while there is no evidence that the Defendant ever physically touched the Plaintiff, the fact (again assuming Plaintiff's version of events to be true) that he pointed a firearm at the Plaintiff and threatened him may, under some circumstances, by itself be sufficient to prove an excessive force claim. Cf. Amuels v. Nutter, No. 15-665, 2016 WL 1572933, at * 2-3 (E.D.Va. April 18, 2016) [Noting Fourth Amendment Excessive Force Claim based on the pointing of a firearm may be viable under some circumstances]; see also Gunsay v. Mozayeni, No. 16-1131, 2017 WL 2684015, at * 4-5 (4th Cir. June 21, 2017) [Discussing excessive force involving the pointing of a firearm]; Cook v. Holmes, No. 16-17, 2016 WL 6561458, at * 4 (W.D.Va. Nov.3, 2016)[same]; Robinson v Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002) [Finding that pointing a gun at the head of an apparently unarmed man was actionable as excessive force under the facts of that case]; Bellotte v. Edwards, No. 08-94, 2009 WL 10675028 at * 5 (N.D.W.Va. Feb. 2, 2009).

Therefore, the Defendant is not entitled to summary judgment on Plaintiff's excessive force claim at this time. Anderson, 477 U.S. at 255 [At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," are all functions for the trier of fact].



**IV.**

The Defendant also argues that even if he did violate Plaintiff's constitutional rights, which he denies, he is still entitled to summary judgment on Plaintiff's federal claim because he is entitled to qualified immunity from suit. The doctrine of qualified immunity protects government officials performing discretionary functions from civil damages insofar as their conduct did "not violate [any] clearly established rights of which a reasonable person would have known". Harlow v Fitzgerald, 457 U.S. 800, 818 (1982). As was stated by the Fourth Circuit in Wiley v Doory, 14 F.3d 993 (4th Cir. 1994):

> Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) . . . As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d at 995 (internal citations omitted), cert. denied, 516 U.S. 824 (1995).

Defendant argues that he is entitled to qualified immunity because a reasonable person in his position would not have known that engaging in the conduct alleged would be a violation of Plaintiff's constitutional rights. However, the Defendant's argument is again premised on his conduct being based on his version of events: that the Plaintiff brandished a firearm or he had a reasonable belief that Plaintiff brandished a firearm, and that no reasonable person would therefore have believed that pulling over and detaining the Plaintiff would have constituted an unlawful seizure under the Fourth Amendment. However, as previously discussed, supra, for purposes of Defendant's motion,

15



it is the Plaintiff's version of the facts which must be accepted; <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996) [At summary judgment, the facts and evidence are considered in the light most favorable to the party opposing the motion]; and considering the evidence in the light most favorable to the Plaintiff, there is a genuine issue of fact as to whether the Defendant had probable cause to engage in the conduct in which he engaged, and in particular whether he ever even saw the Plaintiff with a firearm or had reasonable grounds to believe that Plaintiff had brandished a firearm.

It was certainly clearly established at the time of the incident at issue in this lawsuit that probable cause is required to justify a seizure under the Fourth Amendment. <u>United States v. DiGiovanni</u>, 650 F.3d at 506 ["When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment"]; <u>Robinson</u>, 2016 WL 4975021, at * 3 [Noting that an individual is "seized" under the Fourth Amendment when there is a termination of freedom of movement through means intentionally applied]; <u>Wilson</u>, 514 U.S. at 931 [The Fourth Amendment commands that seizures be reasonable]; <u>Brinegar</u>, 338 U.S. at 175-176 ["probable cause [requires] a reasonable ground for belief of guilt . . . to allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice"]. It was also clearly established in 2014 that use of force during a traffic stop beyond what is objectively reasonable under the circumstances, including threatening someone with a firearm, can constitute excessive use of force. <u>Graham</u>, 490 U.S. at 388; <u>Riley</u>, 115 F.3d at 1161; <u>Robinson</u>, 278 F.3d at 1015.

Therefore, as it was clearly established at the time of the incident at issue that probable cause is required to justify a seizure under the Fourth Amendment, as there is a genuine issue of fact presented in the evidence as to whether the Defendant had probable cause to stop and detain the Plaintiff, and as there is a genuine issue of fact as to whether the amount of force used by the



Defendant was objectively reasonable under the circumstances, the Defendant is not entitled to summary judgment on Plaintiff's Fourth Amendment claim based on qualified immunity. David v. Mosely, 915 F.Supp.776, 784 (E.D.Va. 1996) [If the law was clearly established, the immunity defense should fail since a reasonably competent public official should know the law governing his conduct] (citing Harlow, 457 U.S. at 818-819); cf. Turmon v Jordon, 405 F.3d 202, 207-208 (4th Cir. 2005) [denying qualified immunity for officer who pointed a gun at an individual, grabbed his arm and handcuffed him when there was no reasonable basis to conclude a crime had been committed); see also Pearson v. Callahan, 555 U.S. 223, 232 (2009) [At summary judgment, determining whether qualified immunity applies rests on 1) whether the facts (construed in the light most favorable to the non-moving party) show the violation of a constitutional right, and 2) whether the right in question was clearly established at the time of the misconduct].

## V.

Plaintiff also asserts two causes of action against the Defendant under state law: false imprisonment (Second Cause of Action), and assault (Third Cause of Action). Defendant argues in his motion for summary judgment, inter alia, that Plaintiff is alleging that at all times relevant hereto that the Defendant was acting in his official capacity, and that Plaintiff's state law claims are therefore governed by the South Carolina Tort Claims Act (SCTCA). See S.C.Code Ann. §15-78-10, et seq. Defendant notes that the SCTCA provides the exclusive remedy for any tort committed by an employee of a governmental entity acting within the scope of their official duties, and that pursuant to the SCTCA he cannot be individually sued as the party Defendant under Plaintiff's state law causes of action because the proper party Defendant for any such claims would be the Office of the Coroner. See S.C.Code Ann. §15-78-70(c), [providing that a person bringing a tort claim under the SCTCA



is required to name as the party defendant only the agency or the political subdivision for which the employee was acting, and that where an employee is individually named, the agency or political subdivision for which the employee was acting "must" be substituted as the party defendant]. Therefore, Defendant argues he is entitled to summary judgment on Plaintiff's two state law causes of action.

However, in his response to the Defendant's motion for summary judgment, Plaintiff confirms that he is only suing the Defendant in his individual capacity under his state law claims. He is not suing the Defendant as a government official or alleging (for purposes of his state law causes of action) that the Defendant was acting within the scope of his official duties during the time period at issue.[13] The SCTCA specifically provides that a governmental entity is not liable for a loss resulting from employee conduct outside of the scope of their official duties, or for conduct which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude. Rather, the government employee may be sued individually for such conduct. See S.C. Code Ann. §§ 15-78-60(17), 70(b); McCall v. Williams, 52 F.Supp. 2d 611, 615 (D.S.C. 1999)["SCTCA does not grant an employee 'immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.'"](quoting S.C. Code § 15-78-70(b)(Supp. 1997)); Brown v.

---

[13]It is worth noting that, although Plaintiff alleges that the Defendant was *not* acting within the scope of his employment for purposes of Plaintiff's two state law causes of action, Plaintiff specifically alleges the Defendant *was* acting in his capacity as a government official for purposes of Plaintiff's federal cause of action (although suing him in his individual capacity). Of course, the Defendant argues the exact opposite for these claims. In any event, these conflicting arguments (by both Plaintiff and Defendant) do not require either a granting or denial of Defendant's motion at this time.



County of Berkeley, 622 S.E.2d 533, 537-538 (S.C. 2005) [same]; <u>see</u> <u>also</u> <u>Southern Holdings, Inc.</u> <u>v. Horry County, South Carolina</u>, No. 02-1859, 2007 WL 896111 at * 8-9 (D.S.C. Mar. 21, 2007)[Discussing allowing claim against Defendant in individual capacity where Defendant is alleged to have acted outside the scope of his employment].

Considered in the light most favorable to the Plaintiff, a genuine issue of fact has been presented in the evidence with respect to whether, during the relevant time period, the Defendant was acting outside the scope of his official duties for purposes of Plaintiff's state law claims. First, the Defendant himself specifically attests in his affidavit that his actions were of a private nature, and that he did not intend to act on behalf of the State. <u>See</u> <u>Defendant's Affidavit</u> (Plaintiff's Exhibit 10), at ¶¶ 4, 15-16. Further, even if the Defendant *was* acting within the scope of his duties, his conduct may still fall outside the scope of the SCTCA if he is found to have acted with malice or intent to harm, and there is evidence that could support an inference that the Defendant was acting against the Plaintiff with a personal animus or intent to harm, in that he repeatedly referred to the Plaintiff as a "damn n*****", called him a "black mother f*****", pointed a loaded gun at the Plaintiff, and stated that he hoped the Plaintiff would die and that he himself would kill him and bury him in his garden. <u>See</u> <u>generally</u>, <u>Plaintiff's Exhibit 5</u> (911 audio call); <u>Plaintiff's Deposition</u>, pp. 62-64, 162-163; <u>Winningham Deposition</u>, pp. 114-116, 119-120, 125-126; <u>Kufen Deposition</u>, pp. 34-35.

If the Defendant was acting outside the scope of his employment during the time period at issue, or acted with actual malice or with an intent to harm, he is subject to suit for these tort claims in his individual capacity. <u>See</u> S.C.Code Ann. § 15-78-70(b). Therefore, the Defendant is not entitled to summary judgment on Plaintiff's state law causes of action on the ground that they are precluded by the SCTCA, as a suit against the Defendant in his individual capacity, either because



he was acting outside the scope of his employment during the time period at issue or because he acted

with actual malice or an intent to harm, would not fall under the SCTCA. <u>See</u> S.C.Code Ann. § 15-78-60(17).[14]

However, the Defendant further argues that, even if otherwise properly before this

Court, Plaintiff's claim for false arrest and/or false imprisonment is nonetheless subject to dismissal

on the merits, because his actions were supported by probable cause. The Defendant is correct that,

in order for Plaintiff to prevail on this claim, the evidence must show that 1) the Defendant restrained

him, 2) the restraint was intentional, and 3) the restraint was unlawful, which in turn is determined

by whether the restraint was supported by probable cause. <u>Martin v. Lott</u>, No. 07-3782, 2010 WL

597209, at * 1-2 (D.S.C. Feb. 16, 2010); <u>see also</u> <u>Jones v. City of Columbia</u>, 389 S.E.2d 662, 663

(S.C. 1990). However, as the undersigned has already determined that there is a question of fact as

to whether the Defendant's actions in detaining the Plaintiff were supported by probable cause, the

Defendant is not entitled to summary judgment on Plaintiff's false arrest/imprisonment claim on this

---

[14]Moreover, the undersigned is further constrained to note that if the Plaintiff *was* attempting to assert state law claims under the SCTCA, for which the Dorchester County Coroner's Office would be the proper party Defendant, that the Dorchester County Coroner's Office may be considered a state entity for purposes of such claims. <u>Cf</u>. <u>Williams v. City of Sumter Police Department</u>, 09-2486, 2011 WL 723148, n. 2 (D.S.C. Feb. 23, 2011) [Noting that action against county coroner is an action against the State]; <u>Faltas v. South Carolina</u>, No. 12-1786, 2012 WL 6103204, at * 8 (D.S.C. Nov. 14, 2012) [Noting that the Coroner for Richland County is an agency or department of the State of South Carolina], <u>adopted by</u> 2012 WL 6106421 (D.S.C. June 26, 2013). The SCTCA only provides a limited waiver of immunity by state governmental entities, and specifically provides that it only waives the State of South Carolina's sovereign immunity in *state court* for certain tort claims, but specifically reserves South Carolina's Eleventh Amendment immunity from suit in *federal court*. <u>See</u> S.C.Code Ann. § 15-78-20(e) ["Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."]. Therefore, if the Dorchester County Coroner's Office is a state office, it would enjoy Eleventh Amendment immunity from suit in this Court for Plaintiff's state law claims. <u>Williams</u>, 2011 WL 723148, n. 2 [Noting that action against county coroner is an action against the State].



ground. <u>Jones</u>, 389 S.E.2d at 663 ["the essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification"]; <u>McBride v. School Dist. of Greenville County</u>, 698 S.E.2d 845, 856 (S.C.Ct. App. 2010); <u>see</u> <u>also</u> <u>Porterfield v. Lott</u>, 156 F.3d 563, 568 (4th Cir. 1998) ["At common law, allegations that a warrantless arrest or imprisonment was not supported by probable cause advanced a claim of false arrest or imprisonment . . . ."], quoting <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 181-182 (4th Cir. 1996).

Finally, although the Defendant has not separately set forth any arguments for why the Defendant's state law claim for assault should be dismissed, there is ample evidence in the record to give rise to genuine issue of fact as to whether an assault as defined by state law occurred to preclude the granting of summary judgment on this claim. Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant . . . .". <u>Jones v. Winn-Dixie Greenville, Inc.</u>, 456 S.E.2d 429, 432 (S.C.Ct. App. 1995). Plaintiff's claims in this case meet this standard, as the evidence (considered in the light most favorable to the Plaintiff) shows that the Defendant pulled the Plaintiff over in his automobile, commanded him to get out of his automobile, and then held him at gun point while cursing at him and using racial epitaphs. This evidence is sufficient to show a genuine issue of fact as to whether the Plaintiff was placed in reasonable fear of bodily harm by the Defendant to allow Plaintiff's state law assault claim to survive summary judgment.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **denied.**



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 13, 2017
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).