# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Leroy Fulton, | ) | Civil Action No. 2:15-4355-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Christopher Nisbet, *in his individual capacity*, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate Judge, recommending denial of Defendant's motion for summary judgment. For the reasons set forth below, the Court adopts in part and declines to adopt in part the Report and Recommendation. The Court declines to adopt the Report and Recommendation only insofar as it addresses state-law claims Plaintiff has since abandoned. The Court otherwise fully adopts the Report and Recommendation.

## I. Background

Plaintiff alleges that on that on August 25, 2015, he was awoken by John Mauldin knocking on his door, who told Plaintiff that he was there to repossess a vehicle. Plaintiff told him to leave his property. Plaintiff testified that Mr. Mauldin did not present any paperwork or documentation, and that he informed Mr. Mauldin that he did not have permission to repossess Plaintiff's vehicle. Plaintiff also testified that he then entered his vehicle. At that time, Mr. Mauldin called 911 and told the dispatcher that Plaintiff had pointed a handgun at him. Plaintiff testified that he never pointed a gun at Mr. Mauldin.

While Mr. Mauldin was on the phone with 911 dispatch, Defendant, who was then the Coroner for Dorchester County, South Carolina, approached Mr. Mauldin, identified himself as

-1-

the Coroner, and offered to assist Mr. Mauldin with the repossession. Mr. Mauldin told Defendant that Plaintiff had pointed a gun at him. Although Mr. Maudlin had already contacted police, Defendant called Captain Douglas Wright of the Summerville Police Department and was recorded telling him "there's a repo guy across the street from my house at the damn, damn niggers that live across the street and they there trying to repo his truck and they pulled a gun on him and all kind of shit over here." (Dkt. No. 44-5.)[1]

Plaintiff then left his house in his vehicle, and the Defendant, in his official county vehicle, followed the Plaintiff and activated his vehicle's blue lights and siren. Plaintiff testified that when he stopped, Defendant pointed his county-issued firearm him and told him to "get out of the car you little black mother fucker." (Dkt. No. 44-4.) Police officers then arrived on the scene. They found Defendant wearing pajama pants, holding a gun, and smelling of alcohol. (Dkt. No. 44-15.) Officers directed Defendant to drop his weapon, which he did after a delay of about 15 to 20 seconds. (*Id.*) No parties were charged with any crime that night. Responding officers noted that the repossession company had been trying to repossess Plaintiff's vehicle for eight months "and there could be a vendetta against the owner." (*Id.*) Ultimately, Defendant was charged with misconduct in office and breach of the peace. He pleaded no contest to breach of the peace and the misconduct in office charge was dropped *nolle prosequi*. The Governor suspended him from office after his indictment, and he resigned on February 3, 2016.

On October 27, 2015, Plaintiff filed the present action, asserting claims under 42 U.S.C. § 1983 and South Carolina law. Plaintiff alleges that Defendant conducted an unlawful and unreasonable stop and seizure and used excessive force in violation of Plaintiff's constitutional

---

[1] Defendant later testified that being able, as an elected official, to call African-American citizens "nigger" is "the great thing about South Carolina." (Dkt. No. 44-3 at 15–16.)

rights, falsely imprisoned him, and committed assault. Plaintiff seeks monetary damages. On May 9, 2017, Defendant moved for summary judgment. On October 13, 2017, the Magistrate Judge recommended denial of Defendant's motion for summary judgment. Both parties have filed objections to the Report and Recommendation. In his objections, Plaintiff abandons his state-law claims and seeks leave to amend the complaint to remove those claims.

**II.     Legal Standard**

**A.     Report and Recommendation of the Magistrate Judge**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

**B.     Summary Judgment**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Eleventh Amendment Immunity

Defendant argues that he is immune from this suit under the Eleventh Amendment. The Magistrate Judge correctly determined that argument is without merit. Defendant is sued in his individual capacity. It is well settled that a state official may be sued for money damages in his individual capacity under § 1983. *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

Defendant objects that he "must be considered the alter ego of the State of South Carolina" and "is immune from suit for all claims under § 1983, since a judgment against [Defendant] in this case would necessarily have to be paid from the State's treasury." (Dkt. No. 55 at 1.) Defendant

asserts that a judgment against Defendant must be paid from the South Carolina treasury because the Insurance Reserve Fund provided a tort liability policy covering Defendant for the relevant period with a $1,000,000 policy limit. Defendant's objection is unfounded. The fact that the state provides an insurance policy covering tort claims against Defendant does not make Defendant an "alter ego of the state." Defendant will be personally liable for any judgment for Plaintiff in this matter; his insurance coverage is a collateral issue.

**B.     State Action**

Defendant argues that during the incident at issue he was not acting "under color of state law," a requirement for liability under § 1983. Defendant asserts that his conduct was "entirely of a private nature." The Court agrees with the Magistrate Judge's determination that argument is "without merit." Considered in the light most favorable to Plaintiff, the evidence shows that Defendant identified himself as the Dorchester County Coroner at the outset. Defendant admits that when Plaintiff left his house in his automobile, Defendant, in his official county vehicle, followed Plaintiff and activated his vehicle's blue lights and siren. (Dkt. No. 43-2 ¶ 7.) When Plaintiff pulled over, Defendant brandished a county-issued firearm. Considering the facts in the light most favorable to Plaintiff, Defendant obviously acted under color of state law.

**C.     Probable Cause**

The Defendant argues that Plaintiff's claim for unlawful seizure and for excessive force rights is subject to summary judgment because Plaintiff has failed to show Defendant lacked probable cause to detain Plaintiff and because Plaintiff has failed to show that excessive force was used.

**1.     *Unlawful detention***

It is undisputed that Mr. Mauldin told Defendant that Plaintiff had pointed a gun at him. It is a crime to point a gun at someone without justification. S.C. Code § 16-23-410. Plaintiff does

not assert that he was justified in pointing a gun at Mr. Mauldin. Instead, he argues he never had a gun. But a victim's statement will normally constitute sufficient probable cause for a detention unless there is an apparent reason to believe the victim is lying. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker" as "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself.").

The Court nonetheless agrees with the Magistrate Judge that Defendant is not entitled to summary judgment as to whether probable cause existed to detain Plaintiff. Contrary to Defendant's objection, which relies on *United States v. Beckham* (*see* Dkt. No. 55 at 6), the rule that law enforcement may rely on a purported victim's statement

> does not mean, of course, that a victim's identification of a suspect or report of a crime is always sufficient, in and of itself, to establish probable cause. To the contrary, "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." Moreover, where "information from or about a [putative] victim of crime would lead a reasonable officer to be suspicious," the officer should conduct further investigation before making an arrest.

325 F. Supp. 2d 678, 688 (E.D. Va. 2004) (citations omitted). Plaintiff has presented evidence that Mr. Maudlin was unreliable, which, indeed, was the opinion of the responding police officers. (*See* Dkt. No. 44-15.) A genuine factual dispute exists as to whether Defendant had probable cause to detain Plaintiff. That dispute, therefore, will be resolved by the jury.

2.  *Excessive Force*

Defendant argues that he is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff has presented no evidence of a seizure "effectuated by excessive force."

Defendant argues that the force used to detain the Plaintiff was reasonable under the circumstances because Plaintiff had brandished a firearm and was attempting to flee after having committed a felony. The Court, however, agrees with the Magistrate Judge's determination that a genuine issue of fact exists about whether Plaintiff brandished a firearm, whether Mr. Mauldin's statement that Plaintiff brandished a firearm was sufficiently credible to provide probable cause, and whether, considering the totality of the circumstances, the force Plaintiff used was objectively reasonable. Further, while Defendant did not physically touch Plaintiff, pointing a firearm at and threatening a person may in some circumstances be excessive force. *See, e.g., Gunsay v. Mozayeni*, No. 16-1131, 2017 WL 2684015, at * 4–5 (4th Cir. June 21, 2017).

Defendant objects that South Carolina statutes permit a private citizen to use deadly force to apprehend a suspected fleeing felon. *See* S.C. Code §§ 17-13-10, -20. Those statutes are not relevant. The Constitution, 42 U.S.C. § 1983, and decisions of federal courts interpreting the Constitution and laws of the United States provide the rule of decision in this federal civil rights action. Regardless, the South Carolina statutes Defendant cites do not purport authorize unconstitutional conduct. South Carolina Code § 17-13-10 allows a private citizen to arrest a suspected felon or thief only if the arresting citizens (1) witnesses the felony or theft or (2) has "certain" information that the arrestee committed a felony. Defendant admits he did not view a felony or larceny being committed. South Carolina courts interpret "certain" information to mean reasonable grounds to suspect the party may be guilty of a felony—the familiar probable cause standard for a warrantless arrest. *See South Carolina v. Swilling*, 155 S.E.2d 607 (S.C. 1967).

Defendant's reference to South Carolina Code § 17-13-20, which arguably authorizes private citizens in some circumstances to use deadly force to apprehend fleeing felons at night, is likewise irrelevant. The Supreme Court has held that "[t]he use of deadly force to prevent the

escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). That is the clearly established law regarding the use of deadly force. The Supreme Court has held that use of non-deadly force to effect an arrest is justified when the officer's actions "are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court agrees with the Magistrate Judge's determination that the objective reasonableness of Defendant's use of force under the circumstances is a question for the jury.

### D. Qualified Immunity

Defendant argues that even if he did violate Plaintiff's constitutional rights, he is entitled to summary judgment on Plaintiff's federal claim because he is entitled to qualified immunity. The doctrine of qualified immunity protects government officials performing discretionary functions from civil damages insofar as their conduct did "not violate [any] clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994).

The Court agrees with the Magistrate Judge's recommendation that the claim of qualified immunity should be rejected. Defendant's claim of qualified immunity is without merit. As the Magistrate Judge observes, it was clearly established at the time of the incident that probable cause is required to justify a seizure under the Fourth Amendment, and it was clearly established that the use of force during a traffic stop beyond what is objectively reasonable under the circumstances,

including threatening someone with a firearm, can constitute excessive use of force. Moreover, Defendant's argument that a reasonable person would not have known that his alleged conduct was wrongful is difficult to reconcile with Defendant's criminal conviction for that same conduct.

In his objections to the Report and Recommendation, Defendant further argues that he is entitled to qualified immunity because "the lawful rights, duties, and responsibilities of a coroner in the State of South Carolina remain unclear." (Dkt. No. 55.) That may be true, but it is irrelevant. Plaintiff's rights under the Constitution to be free from being seized without probable cause and to be free from excessive use of force were clearly established at the time of the incident. Whether Plaintiff actually violated those rights is a question for the jury, but there is not even a colorable argument that a reasonable state official would have been unaware that is unlawful to detain a person at gunpoint without probable cause.

### E. State-law Claims

Defendant also moves for summary judgment as to Plaintiff's state-law claims. The Court finds no error with the Magistrate Judge's analysis of the state-law claims, but Plaintiff's objections to the Report and Recommendation state that Plaintiff is abandoning his state-law claims. The viability of those claims, therefore, is moot. For that reason, the Court declines to adopt the Report and Recommendation as to the state-law claims and grants leave to amend the complaint to remove those claims. Also for that reason, the Court does not consider Defendant's objections to the Report and Recommendation that are specific to state-law claims.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the Report and Recommendation of the Magistrate Judge (Dkt. No. 53). The Court **DECLINES TO ADOPT** section 5 of the discussion (pages 17 to 20) because the viability of Plaintiff's state-law claims is now moot. The Court otherwise **ADOPTS** the Report and

Recommendation. The Court **DENIES** Defendant's motion for summary judgment (Dkt. No. 43), and **ORDERS** that Plaintiff may file an amended complaint that removes state-law claims.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 31, 2017
Charleston, South Carolina