IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Leroy Fulton, | ) | Civil Action No. 2:15-4355-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Christopher Nisbet, *in his individual capacity*, | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's motions in limine to exclude expert testimony from Geoffrey P. Alpert. For the reasons set forth below, the Court denies the motion.

I. **Background**

Plaintiff alleges that on that on August 25, 2015, he was awoken by John Mauldin knocking on his door. Mr. Mauldin told Plaintiff that he was there to repossess a vehicle. Plaintiff told him to leave his property. Plaintiff asserts that Mr. Mauldin did not present any paperwork or documentation, and that he informed Mr. Mauldin that he did not have permission to repossess Plaintiff's vehicle. At that time, Mr. Mauldin called 911 and told the dispatcher that Plaintiff had pointed a handgun at him. Plaintiff denies that he never pointed a gun at Mr. Mauldin.

While Mr. Mauldin was on the phone with 911 dispatch, Defendant, who was then the Coroner for Dorchester County, South Carolina, approached Mr. Mauldin, identified himself as the Coroner, and offered to assist Mr. Mauldin with the repossession. Mr. Mauldin told Defendant that Plaintiff had pointed a gun at him. Plaintiff then left his house in his vehicle, and the Defendant, in his official county vehicle, followed the Plaintiff and activated his vehicle's blue lights and siren. Plaintiff testified that when he stopped, Defendant pointed his county-issued firearm at him and told him to "get out of the car you little black mother fucker." (Dkt. No. 44-4.)

Police officers then arrived on the scene. Officers directed Defendant to drop his weapon, which he did after a delay of about 15 to 20 seconds. (*Id.*) No parties were charged with any crime that night. Ultimately, Defendant was charged with misconduct in office and breach of the peace. He pleaded no contest to breach of the peace and the misconduct in office charge was dropped *nolle prosequi*.

On October 27, 2015, Plaintiff filed the present action, asserting claims under 42 U.S.C. § 1983 for wrongful seizure and excessive force, and claims under South Carolina law. Plaintiff subsequently abandoned his state law claims. This matter is set for jury trial of Plaintiff's § 1983 claims beginning February 5, 2018. On November 11, 2016, Plaintiff disclosed Patrick Gallagher as his expert witness. Circumstances later made Mr. Gallagher unable to testify at trial, so the Court permitted Plaintiff to identify Geoffrey Alpert as an expert witness. Defendant has moved to exclude his testimony.

## II. Legal Standard

Under Rules 104(a) and 702 of the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Thus, the trial court must ensure that (1) "the testimony is the product of reliable principles and methods," that (2) "the expert has reliably applied the principles and methods to the facts of the case," and (3) that the "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b)–(d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592–93, and whether the expert has "faithfully appl[ied] the methodology to facts," *Roche v. Lincoln Prop. Co.*, 175 F. App'x 597, 602 (4th Cir. 2006).

Factors to be considered include "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the

"known or potential rate of error," the "existence and maintenance of standards controlling the technique's operation," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94; *accord United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). However, these factors are neither definitive nor exhaustive, *United States v. Fultz*, 591 F. App'x 226, 227 (4th Cir. 2015), *cert. denied*, 135 S. Ct. 2370 (2015), and "merely illustrate[] the types of factors that will bear on the inquiry," *Hassan*, 742 F.3d at 130. Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying," *Wehling v. Sandoz Pharms. Corp.*, 162 F.3d 1158 (4th Cir. 1998) (unpublished per curiam), or through "research they have conducted independent of the litigation," *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand), and whether experts have "failed to meaningfully account for . . . literature at odds with their testimony," *McEwen v. Balt. Wash. Med. Ctr. Inc.*, 404 F. App'x 789, 791–92 (4th Cir. 2010). The *Daubert* standard applies to non-scientific expert testimony as well. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Rule 702 of the Federal Rules of Evidence also requires courts "to verify that expert testimony is 'based on sufficient facts or data.'" *EEOC v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting Fed. R. Evid. 702(b)). The court may exclude an opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The Court is mindful that the *Daubert* inquiry involves "two guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). "On the one hand, . . . Rule 702 was intended to liberalize the introduction of relevant expert evidence," *id.*, and "the trial court's role as a gatekeeper is not intended to serve as a replacement

for the adversary system," *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013). On the other, "[b]ecause expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinion." *Fultz*, 591 F. App'x at 227.

## III. Discussion

Defendant moves to exclude Plaintiff's expert Geoffrey P. Alpert. Professor Alpert is a professor of criminology at the University of South Carolina. He has been a tenured professor of criminology or sociology for approximately 37 years, and was chair of the department of criminology at the University of South Carolina from 2002 to 2007. He has testified in over thirty cases since 2013. He has published numerous peer-reviewed articles on police policies and the use of force. He has been the monitor for the Consent Decree for the New Orleans Police Department. (*See* Dkt. No. 104-1.)

In this case, Plaintiffs seek to offer an expert opinion Professor Albert regarding generally accepted police policies and procedures. Defendant argues Professor Alpert is not qualified to offer such an opinion because he has no expertise specific to the office of a coroner in South Carolina or the Castle Doctrine. Defendant's arguments are without merit. The peculiarities of the office of coroner in South Carolina are not at issue in this case. What a reasonable officer would do on the night of the incident is at issue. Professor Alpert is manifestly qualified to offer an expert opinion regarding the generally accepted practices that help define the reasonable officer standard. As set forth above, the Court will not permit Castle Doctrine evidence, so Professor Alpert's knowledge of that doctrine is irrelevant.

Defendant also argues Professor Albert's testimony is inherently unreliable because his opinions in this case have not been "tested in any manner whatsoever, subjected to peer review and publication, and/or known to enjoy acceptance in the relative community." (Dkt. No. 84 at 4.)

-4-

That is the last sentence in the last paragraph of Defendant's motion, aside from the boilerplate one-sentence conclusion. Defendant offers no argument or evidence to support that conclusory statement. From review of Professor Albert's CV, it appears to the Court that his opinions on generally accepted police procedures have been subjected to extensive peer review and enjoy general acceptance in the academic community.

Accordingly, the motion in limine to exclude Professor Albert is denied.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion in limine (Dkt. No. 84).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 29, 2018
Charleston, South Carolina